IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORMAN D. GRAY and
LAWANA L. GRAY,

       Plaintiffs,

     v.

SETERUS, INC., and THE
FEDERAL MORTGAGE
ASSOCIATION,

       Defendants.

Civ. No. 6:13-cv-1805-MC

**OPINION AND ORDER**

___

MCSHANE, Judge:

      Plaintiffs Norman & Lawana Gray bring this action against Defendants Seterus, Inc. and the Federal National Mortgage Association ("Fannie Mae"), seeking damages for alleged violations of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, Title VII of the Civil Rights Act of 1968/Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3631, and Elder Abuse, O.R.S. 124. This court has jurisdiction under 28 U.S.C. § 1331 and 1367.

      Defendants filed a motion to dismiss [#9], and the matter is now before this court. Oral arguments were heard on February 19, 2014 [#18]. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

1 – OPINION AND ORDER

## FACTUAL BACKGROUND

According to the Complaint [#2], in 2003 the Grays got a mortgage for their Lane County home from the lender "Green Point Mortgage," who then sold the loan to Fannie Mae. Seterus is the loan Servicer for Fannie Mae. When the Grays originally secured this loan, they used Norman's brother (Howard Gray) as a cosigner in order to qualify. Howard filed for Chapter 7 bankruptcy in 2009 and Quit Claimed his interest in the property to the Plaintiffs on July 8, 2011. In Howard's bankruptcy proceedings, his obligation on the mortgage was discharged without reaffirming the debt. Howard does not live in Oregon, never lived on the property, and never contributed to any mortgage payments for it. [*Id* at page 2].

In September 2010, Lawana Gray applied for a loan modification and mortgage assistance from Seterus based solely on her and her husband's finances. The Grays were ultimately granted a trial payment plan (TPP) beginning October 1, 2010. In December 2010, Seterus offered the Grays a permanent modified plan under the Home Affordable Modification Program (HAMP), if they accepted it by January 31, 2011. The Grays believe they accepted it on or about January 25, 2011, but interlineated the acceptance documents to remove Howard's name and replaced it with Lawana's because Howard was no longer involved (not to mention bankrupt) and their TPP had been accepted without him. The Grays made payments under the new plan through May of 2011. [*Id* at pages 3-4].

This mortgage was subject to "double-tracking," wherein a borrower requests mortgage assistance and the servicer, while reviewing the request, continues to proceed with foreclosure. Seterus completed a non-judicial foreclosure sale on January 19, 2011, which was 16 days after accepting the Gray's January 2011 payment under the new permanent modification plan and 12 days before the Grays had been given to execute and return the documents. Seterus rescinded

2 – OPINION AND ORDER

Plaintiffs' modification without notice and later verbally claimed that they did so because the acceptance documents had been improperly changed by removing Howard's name and replacing it with Lawana's. However, the documents from the Gray's did not arrive at Seteru's office until 7 days after Seterus had made the sale. The Grays claim that Seterus formally rescinded the modification after it sold their home in retaliation for their raising concerns regarding the foreclosure sale occurring after they made their January payment and before they were required to return the permanent modification acceptance forms.

Seterus never provided Plaintiffs with another modification after their initial offer on December 21, 2010, even though the Grays allegedly qualified for a HAMP modification and mortgage assistance. The Grays received help from a HUD counselor and an attorney, but Seterus and Fannie Mae were allegedly reluctant to communicate with them or with the Grays themselves.

The Grays filed suit in October 2013 against Seterus and Fannie Mae, claiming they discriminated against them based on their disability (of Mr. Norman Gray, a disabled Vietnam Vet), age (of both Grays in their late 60's), and sex (of Mrs. Lawana Gray). The Grays seek damages for alleged violations of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, Title VII of the Civil Rights Act of 1968/Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3631, and Elder Abuse, O.R.S. 124.

On December 6, 2013, Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). [#9]. The motion was accompanied by a supporting memorandum [#10]. The matter is now before this court.

3 – OPINION AND ORDER

## STANDARD OF REVIEW

In determining a standard of review for a motion to dismiss for failure to state a claim upon which relief can be granted, the Supreme Court has stated that, "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007). Under Federal Rules of Civil Procedure 12(b)(6), a complaint is construed in favor of the plaintiff, and its factual allegations are taken as true. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir 2010). However, the court need not accept as true "conclusory" allegations, unwarranted deductions of fact, or unreasonable inferences. *Id.*

## DISCUSSION

In the Defendants' motion to dismiss and supporting memorandum [#9, #10, #16], they claim that the Plaintiffs have failed to state a claim upon which relief can be granted in regards to all three of Plaintiffs' claims, as required by the applicable statutes found in 15 U.S.C. § 1691 (Equal Credit Opportunity Act), 42 U.S.C. §§ 3601-3631 (Fair Housing Act), and O.R.S. 124 (Elder Abuse under Oregon State law). This court will discuss each of the Defendants' claims separately.

4 – OPINION AND ORDER

**I.  Defendants' Liability under 15 U.S.C. § 1691 (Equal Credit Opportunity Act)**

The Defendants contend that the Plaintiffs have failed in multiple ways to plead the necessary elements to state a claim under the ECOA, 15 U.S.C. § 1691.   First, the Defendants argue that "disability" is not among the protected classes listed under the ECOA, so the Plaintiffs' disability claim under the ECOA is not legally cognizable and must be dismissed. [#10 at page 5].  This court agrees with the Defendants that "disability" is in fact not one of the ECOA's protected classes, and thus this aspect of the Plaintiffs' claim is **dismissed**.[1]

Second, the Defendants argue that the Plaintiffs' ECOA claim fails because the Defendants did not have any involvement in the Originator's (Green Point Mortgage) decision to make the original loan to the Plaintiffs and therefore cannot be held liable for the alleged acts of Green Point because Defendant Seterus is merely the current loan servicer and Defendant Fannie Mae merely acquired the beneficial interest in the Loan after origination.  In the same vein, the Defendants argue that neither Defendant is a "creditor" as defined by the ECOA, and thus cannot be held liable as mere assignees involved only in the loan modification. [#10 at page 4-5].  This court disagrees with this analysis and **denies** this aspect of Defendants' motion.

As the Plaintiffs point out in their Response, interpretative and regulatory authority of the ECOA falls under the purview of the Consumer Finance Protection Bureau (CFBP). [#13 at pp. 6-7]. And while the CFBP's interpretations are not binding on this court, they are instructive and persuasive because "When Congress delegates authority to interpret and implement a federal act to a federal administrative agency, that agency's interpretation and implementation is entitled to deference." *Chevron USA v. NRDR*, 467 U.S. 837, 842-4 (1984).  The most compelling such interpretation germane to this case was found in the June 2013 "CFPB Consumer Laws and

---

[1] The Plaintiffs seem to have conceded this point by not refuting it in their Response [#13] or oral argument [#18].

5 – OPINION AND ORDER

Regulations – Policy Guidance" included as "Exhibit A" in Plaintiffs' Response. Here, the CFBP has interpreted the relevant ECOA definitions to, "[P]rohibit discrimination in any aspect of a credit transaction, ... [including] discriminating against borrowers on a prohibited basis in approving or denying loan modifications. ...[because] the definition of credit includes the right granted by a creditor to an applicant to defer payment of a debt... [and] the term 'creditor' includes a creditor's assignee, transferee, or subrogee." [#13 at pp.17-19]. This court is in agreement with the CFPB's broad interpretation of the ECOA, which clearly includes the status and alleged acts of both Defendants in regards to the loan origination and modification.

Third, the Defendants argue that the Plaintiffs failed to allege that the Defendants actually inquired about the Plaintiffs' sex or age, and thus could not have possibly discriminated based on either factor. [#10 at page 5]. This court finds this argument unpersuasive and **denies** this aspect of Defendants' motion.

Undoubtedly, the Grays were required to list their dates of birth and genders somewhere on their many application forms (or have been required to provide documents containing this information). The ECOA does not require that an actual specific inquiry of a person's age or gender to have been made for prohibited discrimination to exist. Nor does it require that the discrimination be intentional. As the caselaw that the Plaintiffs correctly cite, the ECOA includes acts of discrimination under an "effects test" such that neutral creditor policies can have the effect of discrimination without specific intent. [#13 at pp. 9-10, citing *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971); *Abermark Paper Co. v. Moody*, 422 U.S. 405 (1975)]. Therefore, whether or not the Defendants discriminated against the Grays based on their age or gender is a question of fact, and a motion to dismiss for failure to state a claim upon which relief can be granted is not appropriate.

6 – OPINION AND ORDER

Fourth, the Defendants argue that the Plaintiffs' claims are time-barred by the ECOA's statute of limitations insofar as the *origination* of the loan is concerned, which states "No such action shall be brought later than 5 years after the date of the occurrence of the violation." [#10 at page 4, citing 15 U.S.C. 1691e(f)]. The loan originated (with Green Point Mortgage) in February 2003. [#1 at page 2]. The Plaintiffs filed this action in October 2013. *Id.*

This aspect of the Defendants' motion is **denied** because the Plaintiffs do not allege that the discriminatory practices occurred during the origination of the loan. Rather, they claim that the alleged discriminatory practices and behaviors of the named Defendants occurred during and after the 2010 loan modification dispute *and* are still on-going "through the current and present foreclosure action in state court and the continued denial of their modification requests." [#13 at pp. 12-14]. This court is in agreement with the Plaintiffs' interpretation that the complaint was filed within the statute of limitations since the alleged conduct of the named Defendants did not occur until after 2010 and/or is still on-going.


## II. Defendants' Liability under 42 U.S.C. §§ 3601-3631 (Fair Housing Act)

The Defendants argue that the 2010 loan modification dispute does not fall under the Fair Housing Act (FHA) because the forbearance/modification efforts do not constitute the "lending of money" by either Defendant. [#10 at page 6]. The Plaintiffs argue that the acts are covered by the FHA because Congress intended for the FHA to be "enacted with a strict policy that promotes a liberal and broad interpretation." [#13 at page 2].

This court agrees with the Plaintiffs' interpretation in that the scope of the FHA's remedial protections was intended to be liberally construed to affect their intended prohibitions

7 – OPINION AND ORDER

and safeguards. As previously discussed, Congress delegates authority to interpret and implement federal acts to federal administrative agencies, whose interpretations are non-binding on this court but are entitled to deference. Under 42 USC 3608(a) and 3614(a), interpretative and regulatory authority of the FHA falls under the purview of the United States Department of Housing and Urban Development (HUD). The Plaintiffs' Response cites and includes as exhibits [#13 "Exhibits B & C"] two HUD-issued pronouncements clearly concluding that the FHA's prohibition against discrimination includes acts such as loan servicing and modification. Similar the reasoning for granting deference to the interpretations of the applicable federal administrative agency in regards to the ECOA, this court relies upon the unambiguous HUD interpretations of the FHA, which clearly include the status of and alleged acts of both Defendants in this case. Therefore, this aspect of the Defendants' motion is **denied**.

The Defendants further argue that the complaint is "devoid of any allegations involving Fannie Mae in regard to the FHA claim." [#10 at page 7]. The Plaintiffs cite paragraphs 43-46 of their complaint as referring to the alleged wrongful acts of plural "Defendants," to include both Fannie Mae and Seterus. [#13 at page 12]. Since there are only two named Defendants in this case, the plural usage of the word "Defendants" can only be interpreted as referring to both Fannie Mae and Seterus. Accordingly, this aspect of the Defendants motion is **denied**.

Similar to the previously discussed statute of limitations issue under the ECOA, the Defendants also argue that the Plaintiffs' claims are time-barred by FHA's two-year statute of limitations found in 42 USC § 3613(a)(1)(A). [#10 at page 7]. The Plaintiffs argue that the FHA claim is not time barred because the alleged discriminatory behavior against the Grays and similarly-situated people has not yet terminated. [#13 at pp. 12-14]. This court is in agreement with the Plaintiffs' interpretation that the complaint is well within the FHA's statute of

8 – OPINION AND ORDER

limitations since the alleged conduct of the Defendants is still on-going and 42 USC § 3613(a)(1)(A) clearly provides that an action may be filed "not later than two years after the occurrence *or the termination* of an alleged discriminatory housing practice."

### III.  Defendants' Liability under O.R.S. 124.110 (Elder Abuse)

The Defendants argue that the Oregon State Elder Abuse statute (ORS 123.110) does not apply to the Defendants due to their exempt status, nor would it apply to them even if they were not exempt because their alleged acts were not "wrongful." This court agrees with the Defendants and this aspect of their motion to dismiss is **granted**.

In regards to their status, the Defendants argue they are specifically exempt under ORS 124.115 as "financial institutions," as defined by ORS 706.008. [#10 at page 7]. The Plaintiffs argue that the Defendants are not exempt "financial institutions" because they are not FDIC insured. [#13 at page 13]. While this may be a clever and astute observation of minutia, this court does not find the argument compelling. On the one hand, the Plaintiffs have asked this court to *broadly* construe the Defendant's activities as falling within the realm of typical dealings for financial institutions in order to fulfill the requirements of the ECOA and FHA. On the other hand, for their Elder Abuse claim, they want the court to *narrowly* construe the exemption statute so as not to include the Defendants' activities as being typical of financial institutions. To find that the Defendants were not exempt would be unprecedented. The Plaintiff failed to cite any precedent subjecting either Defendant (or similar organizations) to liability under the statute, nor did any surface through the additional diligence of this court.

Regardless of whether or not the Defendants are exempt, their alleged conduct could not plausibly rise to the level of Elder Abuse under the standards established by *Church v. Woods*, 190 Or App 112 (2003), because the alleged conduct was not "wrongful" and did not include "improper means," since the Plaintiffs were under a pre-existing duty to pay the Defendants. *Church v. Woods* established that for a taking to be "wrongful," it must be carried out in pursuit of improper motive or by improper means. *Id*, citing *e.g., Empire Fire & Marine Ins. v. Fremont Indemnity*, 90 Or.App. 56, 62, 750 P.2d 1178 (1988). The court went on to elaborate by stating that "Improper means" must be independently wrongful by reason of statutory or common law, beyond the mere fact of the injury complained of. *Id*, citing *Conklin v. Karban Rock, Inc.*, 94 Or.App. 593, 601, 767 P.2d 444, rev den, 307 Or. 719, 773 P.2d 774 (1989). Examples of improper means the court gave included "violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation and disparaging falsehood." *Id.* In a similar case, the court decided that "a person who *mistakenly* but incorrectly takes money or property from an elderly person in an otherwise lawful context should not create elder abuse liability." *Cruze v. Hudler*, 246 Or App 649 (2011). Therefore, the Plaintiffs' state law claims based on ORS 123.110 are **dismissed**.

## IV. Failure to Join of Green Point Mortgage

The Defendants also argue that the Plaintiffs failed to join a necessary party (Green Point Mortgage) as required by Fed. R. Civ. P. 19(a)(1), and reserve the right to seek dismissal under Fed. R. Civ. P. 12(b)(7). [#10 at page 4, footnote 1]. While the Defendants are free to do so, at first blush such a motion seems premature, because as previously discussed, this court has ruled

10 – OPINION AND ORDER

that the claims brought by the Plaintiffs under the ECOA and FHA can include loan modifications and mortgage assistance activities, as transacted by the named Defendants.

## CONCLUSION

For these reasons, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

IT IS SO ORDERED.

DATED this 21st day of March, 2014.

_____
Michael J. McShane
United States District Judge